23-838-cv; 23-7384-cv
*Idlibi v. Burgdorff*; *Idlibi v. New Britain Judicial District*

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

# <u>SUMMARY ORDER</u>

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007 IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of June, two thousand twenty-four.

PRESENT:
> JOSEPH F. BIANCO,
> BETH ROBINSON,
> SARAH A. L. MERRIAM,
> *Circuit Judges*.

_____

AMMAR IDLIBI,

> *Plaintiff-Appellant*,

v.                                                                              23-838

MARY-MARGARET D. BURGDORFF,
Individual and Official Capacity, Judge at
Middlesex Judicial District, Superior Court Child
Protection Session at Middletown,

> *Defendant-Appellee*.

_____

AMMAR IDLIBI,

> *Plaintiff-Appellant*,

v.                                                                              23-7384

NEW BRITAIN JUDICIAL DISTRICT,

MIDDLESEX JUDICIAL DISTRICT,

*Defendants-Appellees*.

_____

FOR PLAINTIFF-APPELLANT: AMMAR IDLIBI, *pro se*, Terryville, Connecticut.

FOR DEFENDANTS-APPELLEES: BENJAMIN A. ABRAMS, Assistant Attorney General (Emily Adams Gait, Assistant Attorney General, *on the brief in 23-838 only*), *for* William Tong, Connecticut Attorney General, Hartford, Connecticut.

Appeals from judgments of the United States District Court for the District of Connecticut (Jeffrey Alker Meyer, *Judge*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgments of the district court, entered on April 28, 2023, and September 26, 2023, are **AFFIRMED**.

These two appeals, which arise out of two different lawsuits but relate to the same subject matter, have been considered in tandem and consolidated for disposition. We assume the parties' familiarity with the underlying facts, procedural history, and issues on appeal, to which we refer only as necessary to explain our decision to affirm.

In July 2022, Ammar Idlibi, proceeding *pro se*, sued Connecticut Superior Court Judge Mary-Margaret D. Burgdorff, in both her individual and official capacities, alleging that she discriminated against him in adjudicating the termination of his parental rights in a 2019 state-court proceeding in the Middlesex Judicial District. Idlibi, who is Muslim, claimed that Judge Burgdorff relied on false evidence to keep his three children in a Christian foster home. He also alleged that Judge Burgdorff conspired against him by communicating with other judicial staff—

including an appellate judge—to influence the outcome of his ultimately unsuccessful appeal from Judge Burgdorff's judgment.

In November 2022, Idlibi sued the New Britain and Middlesex Judicial Districts ("the Judicial Districts") in separate actions, asserting constitutional claims under 42 U.S.C. §§ 1981 and 1983, and statutory claims under Titles V, VI, and VII of the Civil Rights Act of 1964.[1] He incorporated by reference his earlier allegations against Judge Burgdorff, contending that the courts within the Judicial Districts also discriminated against him by interfering with his legal filings and failing to properly notify him about the child custody proceedings, in violation of his rights to due process and equal protection under the Constitution.

In both cases, the district court granted defense motions to dismiss under Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). With respect to the case against Judge Burgdorff, the district court determined that Idlibi's claims were barred by the *Rooker-Feldman* doctrine, Eleventh Amendment immunity, and absolute judicial immunity, and that his allegations otherwise failed to state a plausible, non-conclusory claim upon which relief could be granted. *See Idlibi v. Burgdorff*, No. 3:22-cv-902(JAM), 2023 WL 3057160, at *2–6 (D. Conn. Apr. 24, 2023). With respect to the case against the Judicial Districts, the district court held that Idlibi's constitutional claims against them under Section 1983 were barred by Eleventh Amendment immunity, and that his statutory claims failed because there is no private right of action under Title V, and he had not

---

[1] Judge Burgdorff is a judge of the Middlesex Judicial District. After exhausting his unsuccessful appeals challenging the 2019 judgment, Idlibi filed an amended petition for a new trial in May 2021 in the New Britain Judicial District, asserting that Judge Burgdorff and the Connecticut Department of Children and Families ("DCF") had discriminated against him and that attorneys representing his children had failed to accurately represent the children's positions. On July 27, 2021, a Connecticut Superior Court Judge issued a decision striking Idlibi's amended petition, finding that it was not legally sufficient to support an order for a new trial.

adequately pleaded that any alleged discrimination was based on racial animus (for Title VI), or that he was an employee (for Title VII). *See Idlibi v. New Britain Jud. Dist.*, No. 3:22-cv-1374(JAM), 2023 WL 6216810, at *3–4 (D. Conn. Sept. 25, 2023). These appeals followed.

We review the dismissal of a cause of action pursuant to Rules 12(b)(1) or 12(b)(6) *de novo*, meaning without deference to the district court. *See Jaghory v. N.Y. State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir. 1997). *Pro se* submissions are liberally construed to raise the strongest arguments they suggest. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013).

## I.     *Rooker-Feldman*

The district court correctly held that the *Rooker-Feldman* doctrine bars Idlibi's claims to the extent that he seeks to undo the final state-court judgment issued by Judge Burgdorff.

*Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 414–15 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 482 (1983), "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Hoblock v. Albany Cnty. Bd. of Elections*, 422 F.3d 77, 84 (2d Cir. 2005). The *Rooker-Feldman* doctrine applies to "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

Here, Idlibi's unfavorable state-court judgment—the source of the injury for which he seeks monetary damages, declaratory relief, and injunctive relief in the instant cases—was rendered before he filed the federal suits. Idlibi thus cannot seek relief that would require a

4

reversal of the state-court judgment rendered by Judge Burgdorff. Idlibi seeks to sue the judge and court itself for alleged misconduct. Therefore, insofar as Idlibi's actions seek review of the judgment, granting relief would necessarily require rejection of the judgment, and *Rooker-Feldman* applies. *See Sung Cho*, 910 F.3d at 645 (noting that the Second Circuit applies "with some frequency" the *Rooker-Feldman* doctrine in suits directly against judges or in which error by state-court judges is asserted). To the extent that Idlibi seeks to assert independent claims against Judge Burgdorff or the Judicial Districts that would not involve undoing the state-court judgments and thus would not be barred by the *Rooker-Feldman* doctrine, *see Dorce v. City of New York*, 2 F.4th 82, 104 (2d Cir. 2021), the district court properly dismissed such claims for the reasons set forth below.

## II. Eleventh Amendment Immunity

Eleventh Amendment immunity precludes Idlibi's claims against Judge Burgdorff in her official capacity and his constitutional claims under Section 1983 against the Judicial Districts. The Eleventh Amendment to the United States Constitution bars suits in federal court by private parties against a state, absent consent to suit or an express statutory waiver of immunity. *See* U.S. Const. amend. XI; *see also Tennessee v. Lane*, 541 U.S. 509, 517 (2004). Eleventh Amendment immunity extends to "'state agents and state instrumentalities' that are, effectively, arms of a state." *Woods v. Rondout Valley Cent. Sch. Dist. Bd. of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (quoting *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 429 (1997)).

Here, both Judge Burgdorff and the Judicial Districts are state officials or entities for Eleventh Amendment purposes.[2] *Cf. Gollomp v. Spitzer*, 568 F.3d 355, 366–68 (2d Cir. 2009)

---

[2] Idlibi correctly notes that municipalities, unlike states, are not protected by the Eleventh Amendment.

(holding that the New York state court system was part of the state government, and therefore protected by Eleventh Amendment immunity). Congress has abrogated Eleventh Amendment immunity for the statutory claims Idlibi brings here. *See Alexander v. Sandoval*, 532 U.S. 275, 280 (2001) (finding that Congress abrogated state sovereign immunity for claims under Title VI); *Fitzpatrick v. Bitzer*, 427 U.S. 445, 447–48 (1976) (holding that Congress abrogated state immunity for claims under Title VII). However, state officials may assert Eleventh Amendment immunity for constitutional claims brought under Section 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 67 (1989) (finding that state officials were immune because "in enacting § 1983, Congress did not intend to override well-established immunities or defenses under the common law").

The *Ex parte Young* exception, on which Idlibi relies, does not apply. *Ex parte Young*, 209 U.S. 123 (1908), and its progeny permit suits for prospective injunctive relief against state officers in their official capacities. *See, e.g.*, *Vega v. Semple*, 963 F.3d 259, 281 (2d Cir. 2020). However, this exception to Eleventh Amendment immunity "does not normally permit federal courts to issue injunctions against state-court judges or clerks." *Whole Woman's Health v. Jackson*, 595 U.S. 30, 39 (2021). Furthermore, although Idlibi contends that he seeks "prospective" relief in the form of a declaration that the state court lacked a factual basis for terminating his parental rights and an injunction, *see* Appellant's Br. in Dkt. No. 23-7384 at 11, such relief would be retrospective, not prospective, and a plaintiff cannot make an "end run around

---

*See Monell v. Dep't of Soc. Servs. of City of N.Y.*, 436 U.S. 658, 694 (1978). However, the Judicial Districts are neither municipalities nor municipal instrumentalities, but are instead part of the State of Connecticut's judicial branch. *See Woods v. Rondout Valley Cent. School Dist. Bd of Educ.*, 466 F.3d 232, 236 (2d Cir. 2006) (observing distinction between municipality and state agencies).

the Eleventh Amendment[]" by seeking a declaration or an injunction based solely on past violations of federal law. *Ward v. Thomas*, 207 F.3d 114, 120 (2d Cir. 2000) (internal quotation marks and citation omitted). Accordingly, the *Ex parte Young* exception does not apply and Eleventh Amendment immunity bars Idlibi's claims against Judge Burgdorff in her official capacity, as well as his constitutional claims against the Judicial Districts.

### III.    Absolute Judicial Immunity

With respect to Idlibi's claims against Judge Burgdorff in her individual capacity, the district court also correctly concluded that Judge Burgdorff is immune from suit in her individual capacity for alleged misconduct in adjudicating Idlibi's parental rights. Judges are absolutely immune from damages suits for judicial acts, even when a complaint raises "allegations of bad faith or malice," *Bliven v. Hunt*, 579 F.3d 204, 209 (2d Cir. 2009), as long as that conduct was not taken in the "complete absence of all jurisdiction," *Mireles v. Waco*, 502 U.S. 9, 12 (1991) (per curiam).

Judge Burgdorff's conduct in making factual findings and adjudicating Idlibi's parental rights was judicial in nature and function. *See Bliven*, 579 F.3d at 211 (finding that "[t]he principal hallmark of the judicial function is a decision in relation to a particular case"). Judge Burgdorff is therefore immune from suit on Idlibi's claims regarding any alleged discriminatory findings in the state-court judgment.

Idlibi asserts that Judge Burgdorff is not entitled to judicial immunity because she acted outside her jurisdiction by conspiring against him by speaking with an appellate judge about his case. Assuming *arguendo* that this allegation could implicate conduct "not taken in the judge's judicial capacity," *Mireles*, 502 U.S. at 11, we agree with the district court that Idlibi's allegations

7

are, in context, speculative and conclusory, and thus fail to state a plausible claim for relief that could survive a motion to dismiss. *See Butcher v. Wendt*, 975 F.3d 236, 241 (2d Cir. 2020). In particular, Idlibi has failed to provide any support for his conspiracy claim beyond baldly asserting that the questions at appellate oral argument in state court support an inference that the judges conferred about his case. *See id.* (rejecting "barebones claim" of a judicial conspiracy that was "unaccompanied by any factual allegation to support it"); *see also Liteky v. United States*, 510 U.S. 540, 555 (1994) (An adverse ruling alone is "almost never" evidence of bias.). Accordingly, the district court properly dismissed the claims against Judge Burgdoff in her individual capacity.

## IV.     Statutory Claims

With respect to the statutory claims asserted against the Judicial Districts, the district court properly dismissed those claims for failure to state a claim under Rule 12(b)(6). First, the district court correctly concluded that Title V creates the U.S. Commission on Civil Rights and does not give rise to a private right of action. *See* 42 U.S.C. § 1975. Second, to establish a claim under Title VI, a plaintiff must plausibly allege that (1) "the defendant discriminated against him on the basis of [race, color, or national origin]," (2) the "discrimination was intentional," and (3) "the discrimination was a substantial or motivating factor for the defendant's actions." *Tolbert v. Queens Coll.*, 242 F.3d 58, 69 (2d Cir. 2001) (internal quotation marks and citations omitted). Here, Idlibi failed to state a plausible claim under Title VI because, as the district court noted, his pleading contains no non-conclusory allegations that would support any inference that he suffered discrimination in the judicial proceedings based upon his Middle Eastern national origin. Finally, Idlibi did not state a plausible Title VII claim because he did not allege that he was an employee of the Connecticut courts, and Title VII "applies only to employees." *Salamon v. Our Lady of*

8

*Victory Hosp.*, 514 F.3d 217, 226 (2d Cir. 2008) (internal quotation marks and citation omitted).

*              *              *

In sum, Idlibi's complaints were properly dismissed and, to the extent he challenges the district court's failure to grant leave to amend, we conclude that leave to amend was unwarranted because any attempt to amend would have been futile. *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000). We have considered Idlibi's remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgments of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court